CROSS, Chief Judge
(dissenting):
I must of necessity respectfully dissent.
It is the majority’s opinion that the appellant in this case is without remedy, because Section 642.031(15), F.S.1953, while providing for an effective date of October 1, 1953, allowed a three-year grace period for the issuance and delivery of policies which could have been lawfully issued and delivered prior to October 1, 1953. I am of the conviction that the policy in question failed to comply with specific endorsements required by Section 642.031(15), F.S., which reads as follows :
“(15) This section shall take effect on October 1, 1953, provided any policy, rider or endorsement which could have been lawfully issued or delivered or issued for delivery to any person in this state immediately before the effective date of this section, may be issued or delivered or issued for delivery during three years after the effective date, provided such policy is endorsed so as to comply with (4) (b) (e) and (g) and subsection (5) (h), of this section, when applicable. It is provided that whereas the uniform provisions set forth in this section are in substitution of the provisions of said § 642.03 and said § 642.04(1) effective at the time and as conditioned herein, that where in other parts of Chapter 642, Florida Statutes, reference is made to the standard provisions set forth in said § 642.03 it shall be understood that such reference shall also include the uniform provisions of this section, under the conditions and circumstances as contemplated by the provisions of this section.” (Emphasis added.)
The underlined portion of Section 642.031(15), F.S., makes it mandatory to endorse a policy with certain provisions enumerated therein in order to come within the three-year savings provision. Not only must a policy contain those specific endorsements required by Section 642.031 (15), in order to enjoy the benefit of the three-year savings provision, but the specific endorsements must be written in a manner to comply with Section 642.031(4), entitled “Required Provisions,” which reads in part as follows:
“Except as provided in subsection (6) of this section each such policy delivered or issued for delivery to any person in this state shall contain the provisions specified in this subsection in the words in which the same appear in this section; provided, however, that the insurer may, at its option, substitute for one or more of such provisions corresponding provisions of different wording approved by the insurance commissioner which are in each instance not less favorable in any respect to the insured or the beneficiary. * * *.” (Emphasis added.)
At best the wording of the policy in question with reference to the required endorsements is a halfhearted effort falling short of even substantial compliance. There are no provisions in the policy which deal with incontestability, subsection (4) (b) as alluded to in Section 642.031(15). The provisions of the policy which deal with proof of loss, § (4) (g) as alluded to in Section 642.031(15), are less favorable to the insured or to the bene *713 ficiary. Thus the insurer should not be afforded the benefit of the three-year savings provision.
The Required Provision:
“(4) (b) A provision as follows:
“Time Limit on Certain Defenses:
“1. After three years from the date of issue of this policy no mis-statements, except fraudulent mis-statements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such three year period.
“(The foregoing policy provision shall not be so construed as to affect any legal requirement for avoidance of a policy or a denial of a claim during such initial three year period, nor to limit the application of subsection (5)(a)-(e) in the event of misstatement with respect to age or occupation or other insurance).
“(A policy which the insured has the right to continue in force subject to its terms by the timely payment of premium, (1) until at least age fifty or, (2) in the case of a policy issued after age forty-four, for at least five years from its date of issue, may contain in lieu of the foregoing the following provision (from which the clause in parentheses may be omitted at the insurer’s option) under the caption “INCONTESTABLE”:
“After this policy has been in force for a period of three years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application).
“2. No claim for loss incurred or disability (as defined in the policy) commencing after three years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.
“(For the purpose of permitting insurers to use a uniform policy in several states, the insurer is permitted to print in the policy form in required provisions (b)l. and 2. above the term ‘three years’. Nevertheless, the provi *714 sions .of the contract and text of the statute to the contrary notwithstanding, the time limits for said defenses under any contract delivered or issued for delivery to any person in this state shall not exceed two years.)”
“(4)(g) A provision as follows:
“Proofs of Loss: Written proof of loss must be furnished to the insurer at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the insurer is liable and in case of claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.”
“Affirmative proof'of loss shall be furnished to the company at its said office within ninety days after the date of loss for which claim is made.”
*713 A comparison of the policy provisions with the required provisions vividly illustrates the policy deficiency:
The Policy Provision:
There is no provision in the policy dealing with incontestability. (The policy does purport to be noncancellable. The terms “non-cancellable” and “incontestable” are not synonymous. Dudgeon v. Mutual Benefit Health and Accident Assoc., 4 Cir.1934, 70 F.2d 49; 18 Couch on Insurance 2d, § 72.12.
*714 The purpose and intent of the legislature in promulgating Section 642.031 (5) (k), F.S.19S3, requiring that any exclusionary clause based upon the insured’s intoxication could be only for a loss sustained in consequence of the insured's being intoxicated is to do away with the unconscionable provision in the policy in question. It is, of course, elementary that an insurer has the right to contract with the insured as to what risk the insurer will or will not assume as long as the contract does not violate public policy. Even manifesting the greatest intent to be fair to both insurer and the insured, one certainly cannot close his eyes to the fact that the insurer herein drew up the contract and of necessity has spent much time and effort and much legal advice to ascertain its meaning as opposed to the not so educated insured who purchases the policy, pays his premiums and generally assumes that the contract will do what the large black print on the first page says it will do. Unfortunately, many times, as here, beneficiaries- find out later to their dismay that “the large print giveth; the small print taketh away.”
The purpose of any exception in an insurance policy is simple and obvious. The insurer inserts it in the contract for the purpose of withdrawing from the coverage of the policy as delimited by the general language describing the risk assumed some specific risk which the underwriter declares himself to be unwilling to undertake. The thinking behind placing an exception in a policy is that the insurer excepts a thing or event on the basis that if the insured did the thing or the event occurred, it would thereby more readily increase the risk of the insurer that the occurrence against which the insurer has insured would be more likely to occur.
Unless there was a causal connection between the intoxication and the death, the insurer’s risk would not be increased. Certainly without the causation factor, there would be no increase in the probability that the event insured against would occur. Thus, the exception in the instant case *715 merely gives a windfall to the insurance company. It is not based on a legitimate desire to avoid any increase in the probability that the event insured against would occur. It is my conviction that our foresighted legislature had this in mind when it promulgated Section 642.031(5) (k), F.S.1953. The legislature has finally eliminated an unconscionable exception. One would not have to be a mystic to foresee a myriad of instances where an insured has in good faith maintained his policy, has paid his premiums, yet upon his death his beneficiaries will receive naught.
For example, it has been the custom of many of our commercial airlines today, upon request of the passenger, to serve intoxicating beverages on flights. The mere fact that the insured has imbibed while he was a passenger on a commercial airline would preclude his beneficiaries from obtaining the proceeds of a policy if, as a result of that plane crashing, the insured died.
Or suppose the insured who has imbibed walks across a street and is hit by a bolt of lightning, or some disaster of nature besets him. Here again, his beneficiaries would receive naught.
Or suppose the insured who has imbibed takes an elevator ride, and upon reaching the tenth floor is carried to his death as the result of a malfunction of the elevator, causing it to fall ten floors. Again, the insured’s beneficiaries would receive naught.
Any insured who has imbibed and who is the victim of any circumstance beyond his control and not attributed to his intoxication which would cause him bodily injury resulting in his death would preclude his beneficiaries from recovering. The possibilities are numerous and each is more unjust than the last.
I would reverse the summary final judgment entered for the defendant.